Booth, Judge,
delivered the opinion of the court:
The plaintiff, Maurice Joo, predicates a right of recovery for certain buildings attached to realty upon an alleged act of omission upon the part of the defendant. The gravamen of his complaint is restricted to an allegation that in the course of the proceedings to be set forth herein, he, the recognized owner of the buildings involved, was in fact recognized as entitled to the award made for the value of the same, and that the sum awarded the Hampton Boads Company in a suit in this court for the value of the lands taken did not include the value of his buildings.
The pertinent facts are as follows: The Norfolk-Hampton Boads Company was the owner of what is known as the Pine Grove tract of land at Sewalls Point, Ya. When the Jamestown Exposition Company was organized the Norfolk- *854 Hampton Roads Co. leased this entire tract to the exposition company, and the latter, in turn, leased the lands to the State of Kentucky. The State of Kentucky, in formulating its exhibit for the exposition, erected on the premises three log cabins. After the close of the exposition and the expiration of the lease between the land company and the exposition company, the land company sold these buildings to the plaintiff, taking his promissory notes for $500 in payment therefor. At the same time a verbal agreement was consummated between the plaintiff and the land company leasing the premises' to the plaintiff. This verbal agreement recognized the title of all improvements then or thereafter to be placed on the premises as in the plaintiff, and conferred upon the plaintiff the right to remove the buildings. The land company did not possess an undisputed record title to the whole of the Pine Grove tract.
An adverse claimant, the Vue de L’Eau Company of Virginia, asserted title to a portion of the tract, and the question of fee simple title to the whole was dependent upon open, notorious, and adverse possession by the land company for the sufficient statutory period to give the land company title by prescription to the Vue de L’Eau Company’s interest. The land company on September 16, 1914, seven years after the making of the verbal agreement with the plaintiff,, i. e., the initial agreement, hereinbefore mentioned, entered into a written agreement with the plaintiff by the terms of which the indebtedness of the plaintiff for the purchase of the Kentucky buildings was canceled.and the promissory notes destroyed and liability thereunder released. In consideration of which the plaintiff conveyed to the land company his title to the Kentucky buildings and all other improvements then on or thereafter to be placed upon the premises in question, the plaintiff to continue in possession of the land as tenant at will.
The President, in pursuance of the act of June 15, 1917, 40 Stat. 207, took over this entire tract of land for use as a naval operating base. The order taking it over was dated. June 28, 1917. The compensation board appointed by the President fixed as just compensation for the lands taken $37,000 and $2,175 for the buildings thereon, a total award *855 of $39,175. The land company was dissatisfied with the award. Under the statute the land company desired to accept 75 per cent of the award and sue, as it had a right under the statute to do, for such additional sum as would make up just compensation. The President, however, due to the failure of the land company to exhibit an undisputed record title, and the adverse claim of the Vue de L’Eau Company,, refused to pay over to the land company any portion of the award. In this state of affairs the land company, on December 7, 1920, brought suit in this court to recover as just compensation for the land taken the sum of $220,475, alleging in its petition that it was “ the sole owner of said land with the improvements thereon and the riparian rights thereto belonging.” The Vue de L’Eau Company filed an intervening petition, setting up its adverse claim to a portion of the premises. The case, after the development of a most formidable and complete record, was brought on for trial and resulted in a judgment for the land company in the sum of $68,500, made contingent upon the land company filing with the Attorney General of the United States a good and sufficient deed, and thereafter the amount of the judgment was paid to the land company. It is now insisted by the plaintiff, Maurice Joo, in which insistence the land company joins, that the judgment awarded the land company did not include the sum of $2,175, the conceded value of the buildings which were acknowledged by both the land company and the defendant in that suit to be the property of said plaintiff. It is not to be disputed that in the face of certain requested findings of fact, preferred by both parties in the land company case, that room for this contention exists. The petition of the land company did not concede this fact. The plaintiff was not a party to the litigation, although he was familiar with and knew exactly what the land company was claiming for the lands, for he was a witness for the land company and testified at length in that case. Why he did not intervene or assert title to the buildings in this litigation was manifestly due to the fact that he expected the land. company to recognize his rights and pay him out of any judgment procured.
*856 Obviously this court in the adjudication of the land company’s case could legally accomplish no more than a determination of the rights of the parties properly in court, and whose interests were set up in the respective petitions. A careful examination of the land company’s petition clearly discloses that the land company was contending for a judgment which included the value of the lands taken with all improvements thereon. In our opinion the judgment of this, court conclusively determined the issue. The plaintiff seems to have knowingly submitted to what he believed to be the proper course in securing payment for the property he claimed from the land company. Strange, indeed, if it were otherwise, to allow litigation to proceed to judgment in both this and the Supreme Court without a claim to a portion of the same until long after the same is concluded and paid.
In addition to what has been said, and despite the equities as between the plaintiff and the land company respecting the buildings, the agreement of September 16, 1914, clearly and unmistakably confirms title to the buildings in the land company. The plaintiff by this written instrument divested himself of all legal claim of title to the buildings in suit. An attempt is made to give this instrument a different effect. It must necessarily fail. We must take the agreement as we find it. The plaintiff may not be heard to say that he executed it for an intended purpose, quite aside from transferring title to the property mentioned therein. It is a written contract, free from doubt or ambiguity, presented by the defendant, and evidence which we may not ignore.
The petition will be dismissed. It is so ordered.
Hat, Judge; DowNey, Judge; and Campbell, Chief Justice, concur.
GRAham, Judge, took no part in the decision of this case.